## TOLEDO, P. & W. R. CO. v. CHISHOLM.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1897.)

### No. 881.

1. **RAILROAD TRACK ON PUBLIC THOROUGHFARE — RIGHT OF PUBLIC — TRESPASSER.**
   Where a bridge track is laid on ground previously constituting a public street and levee, one having occasion to use such public thoroughfare, who goes upon such track, is not a trespasser, unless by the ordinance by virtue of which the bridge and track were located the public was deprived of the use of that part of such thoroughfare.

2. **SAME—ORDINANCE GRANTING RIGHT OF WAY—PUBLIC USE.**
   An ordinance granting the right to locate one end of a bridge, approaches thereto, and a bridge track, on grounds dedicated as a public street and levee, which requires such track to be laid 60 feet from the lots fronting on the levee, leaving the street of a uniform width of 60 feet, and that a passageway for teams shall be maintained under the embankment at the end of the bridge, does not indicate a purpose to deprive the public of all use of the ground on which such track is laid.

3. **SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.**
   Where one not a trespasser was killed on the track by a train, it was not incumbent on his administrator to show that he was in the exercise of ordinary care, after proving such negligence of the employés operating the train as would account for his death without fault on his part.

4. **SAME.**
   Where coal cars standing on a spur track could be most easily and conveniently inspected from a railroad track upon which the public had the right to go, it was not negligence to go upon the track for that purpose, provided such place is not dangerous, when ordinary care is exercised in the performance of such work, and trains are run with due regard to the safety of persons who may be upon the tracks.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

W. J. Roberts and Felix T. Hughes, for plaintiff in error.
James C. Davis, for defendant in error.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge. This suit is founded on the Iowa damage act (McClain's Code Iowa 1888, §§ 3730, 3731), and involves a consideration of the liability of the Toledo, Peoria & Western Railroad Company, the plaintiff in error here and the defendant below, for the death of Daniel M. Chisholm, who was run over and killed by one of its trains in the city of Keokuk, Iowa, on the evening of November 3, 1894, at about the hour of 7 o'clock. The accident took place on the bridge track in said city, which leads to the bridge across the Mississippi river connecting the city of Keokuk, Iowa, with the town of Hamilton, Ill. As this track leaves the west or Iowa end of the bridge, it is laid on an embankment for some distance, and curves to the southwest, and eventually connects with the track of the Chicago, Burlington & Quincy Railroad Company, which passes through the city of Keokuk from north to south along the levee. Immediately south of the bridge track, and on a somewhat lower level, is a short spur track, on the south side of which were certain coal sheds and an office, which at the time of the accident were used by the firm of Chisholm, Evans & Co. for the purpose of carrying on the coal business in which that firm was engaged. The deceased was a member of said firm at the date of the accident, and the spur track last referred to was used by the firm for the purpose of receiving and delivering coal at its coal sheds. It had been the habit of the members of said firm to walk along the bridge track from time to time, which was on a higher level, for the purpose of overlooking cars which stood on the spur track, and ascertaining the numbers thereof, and whether they were full or empty; and the testimony produced at the trial fully warranted the inference that the deceased had left his office, on the south side of the spur track, a few moments before the accident occurred, and had either gone upon, or in very close proximity to, the bridge track, for the purpose last stated,—of inspecting certain coal cars which were standing on the spur track,—when he was struck and killed by a passing train belonging to the defendant company, which was running east across the river to the town of Hamilton, Ill. The train in question consisted of two cars drawn by an engine, which was moving backward, with the tender in advance. There was evidence tending to show that there was no light at the rear end of the tender, although it was after dark, that the bell of the engine was not sounded, that the train was running at the rate of 12 or 15 miles an hour, and that in all of these respects it was being operated within the corporate limits of the city of Keokuk in violation of a city ordinance. We are not called upon, however, to consider whether the defendant was guilty of negligence, since, in view of the evidence and the finding of the jury upon that issue, the fact that it was culpably negligent must be assumed.

The question of chief importance presented by the assignment of errors is whether the trial court erred in instructing the jury, as it did, in substance, that the deceased had the right to go upon the bridge track for the purpose of inspecting cars on the spur track, and that he could not be regarded as a trespasser if he went upon the track for that purpose. It is insisted by the defendant company that this direction was wrong; that, in view of its location, the deceased had no right to go upon the bridge track; that if he went there, even to inspect cars standing on the spur track, he was nevertheless a trespasser; that while in such situation the defendant company owed him no duty; and that it cannot be held liable except for an injury which was willfully inflicted. We cannot assent to these propositions. It admits of no controversy that the bridge track is laid on ground which at one time, at least, formed a part of Water street, or a part of the public levee of the city of Keokuk. In the case of Haight v. City of Keokuk, 4 Iowa, 199, 211, 212, it was held, in substance, that the strip of ground marked "Water Street" on the original plat of the city of Keokuk which was filed for record in August, 1840 (the same being an irregular tract of land lying between Orleans street and Cedar street, and fronting on the Mississippi river, which tract includes the land where the bridge track is now laid), had been dedicated to the public for use as a street or levee; that it was subject to a public easement, and to control by the municipal authorities of the city, the same as the other streets of said city; that people might travel over the strip of land in question, and make such use of it as is ordinarily made of public streets and levees. This case was subsequently referred to with approval in Barney v. Keokuk, 94 U. S. 324, and, so far as we are advised, it has never been overruled. The result is that the bridge track must be regarded as laid in a public thoroughfare, and the right of all persons to go across, upon, or along said track, when they have occasion to use the thoroughfare where the track is laid for any lawful purpose, must be conceded, unless the public were deprived of that right by the terms of an ordinance adopted by the city of Keokuk, under and by virtue of which the Keokuk & Hamilton Mississippi Bridge Company and the Hancock County Mississippi Bridge Company were authorized to locate the Iowa end of their bridge at a certain point within the city of Keokuk, and to build the necessary railroad and wagon approaches thereto. The only provisions of said ordinance to which our attention has been directed by counsel, as bearing upon the question whether it deprives the public of the right to go upon said track, are the following, to wit:

"Sec. 2. There is hereby granted to said bridge companies, subject to the terms and conditions contained in this ordinance, the right to locate and erect the Iowa end of said bridge within said city of Keokuk at a point at or near the foot of Blondeau street, upon the levee, and to build the necessary railway and wagonway approaches to said bridge across and along the levee, including the necessary piers in said river, and the embankments and shore abutments; also, the right to lay a single railroad track from said bridge across and along the levee to a point at the foot of Main street, on the levee, so as to connect with the track of the Des Moines Valley Railroad Company at the last-named point.

"Sec. 3. The grant of rights and privileges contained in this ordinance is made to said bridge companies upon the express conditions following, to wit: (1)

That said bridge shall be constructed, operated, and maintained, not only as a railroad bridge, but as a highway, wagon, and pedestrian bridge, and said bridge shall be built and constructed in accordance with a plan, elevation, cross sections, and specifications of said proposed bridge, drawn and made by Thomas Curtis Clark, civil engineer  *  *  *;  said plan, among other things, providing for a bridge twenty feet and eleven inches in the clear between the trusses: a double wagon track, paved with Nicholson pavement, and a pedestrian way five feet in the clear on each side of the bridge on the outside. (2) That said bridge shall be maintained as a highway, and shall be open for the passage of teams and as a highway at all times when not occupied by railroad trains crossing, and boats passing through the draw; and said bridge companies shall maintain, operate, and manage said bridge at all times so as to afford the greatest practicable facilities to the highway travel, and shall not use said bridge as a railroad bridge, for switching or making up trains, but only for the passage of trains and returning engines.  *  *  *   (4) That said bridge and the approaches to the same shall be so built and maintained as not unnecessarily to obstruct or impair the public use of the levee, or to interfere with the drainage of the levee; and the railroad track approaching said bridge along the levee shall be planked between the rails, and the approaches to said bridge shall be provided with crossings over the same wherever such crossings shall be practicable, and a strong and substantial passageway of not less than twenty feet wide in the clear, and of sufficient height to allow the free passage of wagons, drays, and other vehicles, shall be constructed and maintained under the embankment forming the approach to said bridge at a point most convenient for the public use of the levee, and the passage of teams between the portion of the levee below said bridge; the exact location of said passage to be fixed by the city engineer under the direction of the city council. The walls of the embankment and of the curvature of the approaches to said bridge shall be laid in good masonry, to be approved by the mayor of the city and the engineer of the said bridge companies. (5) That said railroad track, from a point near the foot of Main street, on the levee, approaching said bridge, and also the approaches to said bridge, shall be located at least sixty-six feet from the front of the lots lying on Water street; that is to say, Water street shall be of a uniform width of sixty-six feet, and no part of said railroad track, or of the approaches to said bridge, shall be located on the same."

In support of its contention that the aforesaid ordinance operated to prohibit the public from going upon or using that part of the levee which is now occupied by the bridge track, much stress is laid by the defendant company on that provision of the ordinance which directs that the bridge track shall be located at least 66 feet from the front of the lots lying on Water street, and that Water street shall be of a uniform width of 66 feet; also, on that provision which requires a passageway for teams and vehicles to be maintained underneath the embankment at the west end of the bridge. We think, however, that these provisions of the ordinance do not indicate an intention on the part of those who framed it to devote any part of the levee to the sole use of the bridge companies, and to exclude the public therefrom. It is doubtful, to say the least, whether the municipality had the power to vacate a part of the levee, and devote it to the exclusive use of the bridge companies. But, waiving that question, we do not find in the ordinance any evidence of such a purpose. The provisions of the ordinance last referred to were evidently inserted to prevent travel on the street or levee from being unduly obstructed by the location of a railroad track thereon, and by the building of an approach to the bridge; but they fall far short of declaring that the bridge companies should be at liberty to treat the space on which their track was directed to be laid as their private right of way, and

that the public should be excluded therefrom. The ordinance seems to have been framed with a careful consideration for the rights of the public, and without any apparent intent to deprive the public of any of its former privileges. When considered as a whole, it shows very clearly, we think, that a joint use of the levee by the public and by the bridge companies for the movement of their trains was intended, and that such regulations were prescribed as would enable the public to use the same with ordinary safety, and the least inconvenience. In this connection, it is worthy of notice that the views already expressed relative to the rights of individuals to treat the bridge track as a part of the levee, and to go upon the track for any lawful purpose, is in full accord with the practice which was pursued in that regard after the bridge was constructed. It was proven on the trial of the case that pedestrians had been in the habit of walking along the bridge track to and from the bridge, precisely as they were accustomed to walk over other railroad tracks which were located on the levee, and that such practice had been pursued for some years before the accident occurred, with the implied consent of the bridge companies, or whoever had control of the bridge track. At all events, it was not shown that the bridge companies, or any one else, had ever objected to such practice, or denied the right of persons on foot to approach or leave the bridge in that way. We conclude, therefore, that the deceased was entitled to go upon the bridge track for any lawful purpose, provided he exercised due care and circumspection, and that the defense interposed by the defendant company, to the effect that he was a trespasser while he was upon said track, and that it owed him no duty while in that position, was properly overruled.

Complaint is also made of that portion of the charge which deals with the question of contributory negligence. The substance of the objection to this part of the charge seems to be that the court should have instructed the jury that the burden rested upon the plaintiff below to prove that the deceased was not guilty of contributory negligence, since the evidence showed that he must have been on, or very near to, the bridge track, when he was struck by the passing train. It is claimed that his being in such a position raised a presumption that he was negligent. It is further said that the charge of the trial court did not sufficiently direct the jury's attention to the duty of the deceased to be on the lookout for trains, if he found occasion to go upon the bridge track. We think that neither of these propositions is tenable. If the deceased had the right to go upon the bridge track for any lawful purpose, and in so doing was not a trespasser, then we can perceive no reason for holding that it was incumbent on the plaintiff to show that the deceased was not guilty of a want of ordinary care, after such negligence on the part of the company had been proven as was adequate to account for the accident without any fault on the part of the deceased. The law does not presume negligence, but it presumes, until the contrary is shown, that every one in a given situation will act, and has acted, prudently, and with a due regard for his own safety. In so far as we can discover, no reason existed in

the present case for indulging in a different presumption, and requiring the plaintiff to prove affirmatively that the deceased was not at fault. Coasting Co. v. Tolson, 139 U. S. 551, 557, 558, 11 Sup. Ct. 653; Railroad Co. v. Gladmon, 15 Wall. 401; Railroad v. Horst, 93 U. S. 291; Hough v. Railway Co., 100 U. S. 213; Railroad Co. v. Mares, 123 U. S. 710, 720, 721, 8 Sup. Ct. 321. With reference to the other proposition, it is sufficient to say that the deceased was doubtless under an obligation to make use of his senses of sight and hearing, if he went upon the bridge track, or into such close proximity thereto that he was liable to be struck by a passing train; and so the jury were, in substance, instructed by the trial judge. As we read the charge, the jury were directed to inquire and determine, in view of all the evidence, whether the deceased had looked and listened, and had exercised that degree of caution which might reasonably be expected of a person in his situation at the time of the accident. We think, therefore, that the instructions given on this branch of the case were sufficiently specific and comprehensive. The case is somewhat peculiar, in that no one was an eyewitness of the disaster; but facts were proven from which the jury were at liberty to infer what was the proximate cause of the accident, and whether the deceased exercised due care, and with the finding of the jury on these issues we are not at liberty to interfere.

It is further insisted by the defendant company that the trial court should have instructed the jury, as it was asked to instruct it, in substance, that, if the deceased might have inspected the coal cars which were standing on the coal track otherwise than by going on the bridge track, then he was bound to have done so, and that his going upon the bridge track for that purpose was, per se, negligence. We are of opinion, however, that this was not a sound proposition of law, as applied to the case in hand. The coal cars in question, as the evidence tended to show, could be inspected more conveniently and expeditiously by walking along or near to the bridge track, than in any other manner. They were usually inspected in that way, and that method of inspecting them was not necessarily dangerous, but could be done without any considerable risk to life or limb, provided the deceased exercised ordinary care, and provided, further, that trains passing over the bridge were operated with a due regard for the safety of persons who might be on the bridge track. Under such circumstances, it cannot be said that the deceased was in duty bound to inspect the coal cars in some other and more inconvenient way, and that the defendant company, notwithstanding its negligence in operating its train, is absolved from all liability because the deceased did not adopt the safest method of making the inspection.

Some other errors, of less importance than those already considered, have been assigned; but none of them, in our judgment, are tenable, or of sufficient moment to deserve special notice. The case seems to have been fairly tried, and no errors are disclosed by the record which would warrant a reversal. The judgment of the circuit court is therefore affirmed.