## TURNEY v. SOUTHERN PAC. CO.

[75 Pac. 144, 76 Pac. 1080.]

RAILROADS—ORDER GRANTING USE OF PUBLIC HIGHWAY.

1. An order of a county court granting a railway permission to use for its track any part of a county road between designated points, imposing upon it the duty of repairing any damage caused by the construction of its track, requiring it to leave the highway in as good condition as before it began work, to construct and grade a roadway whenever it should occupy the then traveled road, and forbidding it to obstruct the road in any manner, does not give the railway a right to the exclusive use of such road, or deprive the public of the right to use any part thereof, subject to the paramount right of the railway to use the highway for its track.

IDEM.

2. A subsequent order, reciting the particulars in which the railway has failed to comply with the first, adopting the first as the basis of the additional order, then proceeding to define more specifically the railway's duties in the construction of its track, and the condition in which it shall keep the traveled way during the progress or suspension of the work, does not enlarge the rights of the railway, but imposes on it further restrictions and conditions in the use of the highway.

IDEM.

3. A third order granting the railway leave and authority to relocate its track so that it would be nearer the river, and imposing on it the duty of constructing a fence between the traveled roadway and the track, placing a cattle guard at each end of the fence, and relieving it from building any barriers and stone walls, except for its own protection, and further expressly stating that the contract evidenced by the first order, except as modified, shall remain in full force and effect, does not

operate to surrender the right to the exclusive use of any part of the highway to the railway, especially when considered in the light of the subsequent conduct of the public, acquiesced in by the railway, in using the portion of the highway between the track and the river as a foot and bicycle path.

USE OF HIGHWAY BY RAILROAD—ABANDONMENT BY PUBLIC.

4. Orders of a county court granting a railway the right to use a public high-way for its tracks, and the occupancy of the highway by the railway in pursuance of such permission, do not constitute an abandonment by the public of any portion of the highway, in the absence of further evidence of an intent on the part of the county court or the public to abandon the use of any part thereof.

ADVERSE POSSESSION—OCCUPANCY BY PERMISSION.

5. When a railway enters upon and occupies a highway by permission of, and under contract with, the county court, its possession is not adverse to the public.

WHEN ALTERNATIVE ALLEGATION IS PERMISSIBLE IN PLEADING.

6. In an action by a pedestrian against a railway for personal injuries, an allegation that defendant negligently permitted a stick "to fall or be thrown" from the train on or against her is not subject to a motion to make more definite by stating whether the stick fell or was thrown; the facts being peculiarly within defendant's knowledge, and it being liable in either event.

PLEADING—ITEMIZING CLAIMS FOR SPECIAL DAMAGES.

7. In an action for injuries, while damages for medical care, nursing, attendance, and medicine must be specially alleged, they need not be itemized, and the amount of each separately stated.

EVIDENCE OF MANNER OF USE OF HIGHWAY.

8. In an action against a railway company for damages by one who was injured by a stick that was thrown or fell from a passing engine, on the question whether a certain order of the county court gave the company the exclusive use of the public highway where plaintiff was injured, or only an easement thereon, it is competent to offer evidence of how the public has used the highway, if at all, since the entry of such order, and also evidence of what claims, if any, the railway officials had made as to the company's rights.

HARMLESS ERROR.

9. Receiving evidence on a point admitted is not usually harmful error.

RAILROADS—INJURY TO PEDESTRIAN—EVIDENCE.

10. Where a railway was permitted to lay its tracks in a highway, and a pedestrian passing that way was injured by a stick which was thrown or fell from the train, testimony that just prior to and at the time of the injury wood was thrown from the locomotive is competent.

From Clackamas : THOMAS A. McBRIDE, Judge.

This is an action by Rebecca Turney against the Southern Pacific Company to recover damages for an injury suffered by the plaintiff through the alleged negligence of the defendant. In 1868 a public road or highway, about sixty feet wide, from Canemah, in Clackamas County, south to Parrott's Farm, was inclosed by fences of abutting property owners on one side, and the Willamette River on the other. In November, 1868, the county court, upon the

application of defendant's predecessor in interest for permission to occupy the road with its railway track, made the following order:

"In the matter of the Occupation of the County Road by O. C. R. R. Co. of Salem, Leading from Canemah to Parrott's Farm, in Clackamas County.

On this day came said company, by Geo. E. Cole, and the county by Johnson & McCowen, and, after hearing the argument of counsel, it was ordered by the court that the Oregon Central Railroad Company of Salem be allowed to use and occupy any part of the road leading from Canemah to Parrott's Farm, in Clackamas County, for a railroad track or bed; said company repairing all damages wherever it occurs in constructing said railroad, and in no manner whatever obstructing said road; that the road shall be in all respects left in as good a condition as before said company began work. Said company also to make, construct, and grade (wherever the said company occupy the tract now traveled as a county road) a good and passable track or roadway at least twelve feet wide, on a grade to be designated by the court, upon a notice having first been given by said company to this court at a regular term thereof. Said company shall also construct barriers or guards at and in all places that may hereafter be designated by this court, and if the county road shall at any time be injured or damaged by reason of the proximity of the railroad track, or by any act of said company, then said company shall be compelled to repair the same, without delay, upon notice being given by the road supervisor of the district in which said road may be located."

When it came to the actual construction of the railway along the county road, the company wished to have the grade of the road established, and upon its application another order in reference thereto was made and entered by the county court as follows:

"In the matter of the application of the Oregon Central Railroad Company of Salem for the use of the County Road from Canemah to Parrott's Farm.

This matter came before the court upon the representation of Hon. Geo. E. Cole, agent of said company, that it was desirable to have an order of this court fixing the grade of such public road at points where the present traveled track is taken for the track or roadway of said company. Whereupon the court, by the favor of said company's agent, proceeded to make a personal inspection of said road and the work which had been done. And by such examination it was found that neither the spirit nor letter of the order heretofore made by this court in granting the right of way to said company is being complied with, but that, on the contrary, said company, in constructing said roadway or bed, are confining the travel on the county road at places between Canemah and Parrott's Farm to the river bank, and in some instances to the water's edge, by building perpendicular embankments of stone, and leaving said embankments and the county road between them and the river without any protection against high water, or, if any protection is attempted, it is entirely inadequate for the purpose, and does not make the road as secure and convenient as before the company commenced work. Said company is therefore referred to the order heretofore made by this court, as above mentioned, as a basis or guide in controlling their doings in reference to said road, and the condition in which said county road must be left after being by them in any manner interfered with in constructing said railroad. This court readopts the same order as the basis of its action in making the following additional order, to wit: That said company, in confining the travel on said county road to the bank of the river in narrower limits than the sixty feet allowed by law to public roads, creates a necessity for a rock wall protection, and that, when they desire to put in such walls at a greater angle than 45 degrees, they must build such stone walls of very large or heavy material, and, when the angle is 45 degrees or less, the stone must be at least one foot in diameter, and in all cases the openings or interstices in such walls must be well filled with spalls or stone chips, as in ordinary stone wall made in constructing their roadbed. It is further ordered that in any case where said company changed the travel way of the county road, or

remove or change any bridge or filling on said county road, said new roadway, bridge, or filling shall be graded as high, and made as good, convenient, and secure in all respects, as the traveled way before said road was interfered with. And it is ordered that during the progress of said work said company must keep the travelway on said road open, safe, and convenient for the use of the public, and when work is suspended for winter said road must be left in good condition, and not unsafe or miry, as in many places during the winter just passed."

In pursuance of these orders the track of the railway company was laid along the county road on the east side near the fences of the abutting property owners, and, as a consequence, the travel was confined to the space between the track and the river, thereby endangering the safety of teams and stock passing along the highway. In 1877 the railroad petitioned the county court for permission to change the location of its road, and after due consideration the following order in reference thereto was made and entered:

"It is further considered, ordered, and adjudged that the said Oregon & California Railroad Company have leave to, and it is hereby authorized to, change the location of its railroad track, and the right of way now in use over the county road between Canemah and Parrott Creek, as at present located, from a point near the county road crossing at F. Paquet's property, south of Canemah, for the distance of (5,100) five thousand one hundred feet in a southerly direction, as follows: That is to say, said Oregon & California Railroad Company have leave to, and is hereby authorized to, relocate its said road a distance of fourteen (14) feet nearer the river from railroad crossing at Paquet's property, and running from said point fourteen feet northwesterly from said crossing in a southerly direction, and parallel with the line of the railroad as at present located a distance of five thousand one hundred feet, so that the road, when relocated, shall be, except where it deflects to a connection with the road as now constructed, fourteen (14) feet nearer the river than the pres-

ent location. Said company, however, shall fill up so much
of the holes between said track and the fences as will fall
within a twelve-foot roadway, and cause the same to be
made level, and also construct a fence or barrier between
the traveled roadway and the railroad track for said dis-
tance of five thousand one hundred feet, and place the
cattle guard upon its road at each end of said fence, pro-
vided, if at any time said railroad company is prevented
by legal proceedings by property owners adjacent thereto,
or otherwise, from building or maintaining said fence, said
company shall thenceforward be absolved from the obli-
gations to construct or maintain the same, as the case may
be, so far as thus prevented, all at its own expense.

" It is further considered and adjudged that said Oregon
& California Railroad Company be, and it is hereby, re-
lieved and exonerated from making any repair, building
any barriers, stone walls, or otherwise, along said road,
except so far as said company may deem necessary for its
own protection.

" It is further ordered that the contract entered into be-
tween this county and said Oregon California Railroad
Company, of date August 3d, 1869, entered of record on
page 344 of Book No. 2 [3] of the records of this court, be
modified to the extent and in the manner herein specified,
and that, except as hereby changed and modified, said
contract be and remain in full force and effect, and when
said changes are made the same be examined and approved
by the county court."

In accordance with this order the railway company
moved its track, constructed a fence between the same and
the traveled way east thereof, making a lane or road about
twenty-five feet wide, and put in the cattle guards as re-
quired, ever since which time all the travel on the highway,
except foot passengers and bicyclists, has been confined
to the part of the road east of the fence built by the rail-
way company, and between it and the fences of the abut-
ting property owners. Pedestrians and bicyclists, however,
have continued to use the portion of the highway inclosed
by the railway company without objection or protest from

it; and at the time of the injury to the plaintiff there was a well-beaten and plainly marked footpath a short distance west of the railroad track, and between it and the river. On September 13, 1900, the plaintiff, who lives on the county road, about a mile south of Canemah, while going from her home to Canemah along the footpath, saw a freight train of the defendant company approaching, and stepped off the path toward the river; and, while the train was passing her, a stick of wood was projected from the engine or tender, striking and severely injuring her. In her complaint she alleges that the employés of the defendant negligently and carelessly caused and permitted the stick or piece of wood "to fall or be thrown" from the train upon and against her, and that by reason of the injury she has been compelled to pay out and has incurred "large sums for medical care and skill, nursing and attendance, and for medicine, and has been incapacitated for carrying on her usual avocation [as housewife], and whereby she has been permanently injured, incapacitated, and disfigured, and her health impaired, and will never be able to carry on her usual avocation, and has been and will be rendered· an invalid, and has been and will suffer great inconvenience and discomfort, all to her damage in the full sum of fifteen thousand dollars." The defendant moved for an order requiring the plaintiff to make her complaint more definite and certain, in this: (1) To state whether or not she claimed that the stick of wood fell or was thrown from the train upon and against her; and (2) to state what sums, if any, she has been compelled to pay out and incur for medical care and skill, nursing, attendance, and medicine. This motion was overruled, and the defendant answered, denying the negligence as alleged, setting up an exclusive right to the use of that part of the highway between its fence and the river, and averring that plaintiff was a trespasser thereon at the time

of the injury.  A reply was filed, putting in issue the new matter set up in the answer, and upon the trial the plaintiff had a verdict and judgment, from which the defendant appeals.                                        AFFIRMED.

For appellant there was an oral argument by *Mr. Wm. D. Fenton,* with a brief over the names of *W. D. Fenton, J. C. Moreland, Geo. C. Brownell,* and *James E. Fenton* to this effect:

I. Respondent should have been required to state whether she relied on the act of defendant in throwing the stick of wood off the tender or letting it fall off: B. & C. Comp. § 67; *Cederson* v. *Oregon Navigation Co.* 38 Or. 343, 352 (62 Pac. 637, 21 Am. & Eng. R. R. Cas. 624); *Wilson* v. *New York & H. R. R. Co.* 18 R. I. 491.

A pleading is bad when it states material facts in the alternative, so that it is impossible to determine upon which of several equally substantive averments the pleader relies for the maintenance of his action: *Highland Ave. & B. R. Co.* v. *Dusenberry,* 94 Ala. 413 (10 So. 274); *Jamison* v. *King,* 50 Cal. 132; *Wheeler* v. *Thayer,* 121 Ind. 64; *Com.* v. *Abell,* 6 Mar. (Ky.) 476; *Baugh* v. *Ramsey,* 4 T. B. Mon. (Ky.) 156; *Stone* v. *Graves,* 8 Mo. 148 (40 Am. Dec. 131); *Sanford* v. *New York Fourth Nat. Bank,* 60 Hun, 484 (15 N. Y. Supp. 181); *Ladd* v. *Ramsby,* 10 Or. 207; *Woodward* v. *Oregon Ry. & Nav. Co.* 18 Or. 289 (22 Pac. 1076). *Iseman* v. *McMillan,* 36 S. Car. 27 (15 S. E. 336); *Leidersdorf* v. *Second Ward Sav. Bank,* 50 Wis. 406.

Such a pleading is subject to a motion to make more definite and certain: B. & C. Comp. § 86; *Riemer* v. *Johnke,* 37 Wis. 258; *Jackson* v. *Jackson,* 17 Or. 110 (19 Pac. 847); *Freekson* v. *Turner,* 19 Or. 106 (23 Pac. 857); *United States* v. *Oregon Ry. & Nav. Co.* 16 Fed. 524; *Neis* v. *Yocum,* 16 Fed. 168.

II. Respondent should have been required to state in

her complaint more definitely and with greater certainty what sums, if any, she had been compelled to pay out and incur for medical care and skill, nursing and attendance, and for medicine: 2 Greenleaf, Ev. (15 ed.) § 254; *Alabama G. S. R. Co.* v. *Tapia*, 94 Ala. 226 (10 So. 236); *Dowdell* v. *King*, 97 Ala. 635 (12 So. 405); *City of Pueblo* v. *Griffin*, 10 Colo. 366 (15 Pac. 616); *Tomlinson* v. *Town of Derby*, 43 Conn. 562; *South Cov. & Cin. S. R. Co.* v. *Ware*, 84 Ky. 267; *Patten* v. *Libbey*, 32 Me. 378; *O'Leary* v. *Rowan*, 31 Mo. 117; *Parker* v. *Bond*, 5 Mont. 1 (1 Pac. 209); *Ryerson* v. *Marseillis*, 16 N. J. Law, 450; *Gumb* v. *Twenty-Third St. Ry. Co.* 114 N. Y. 411 (21 N. E. 993); *Uransky* v. *Dry Dock, E. B. & B. R. Co.* 118 N. Y. 304 (23 N. E. 451); *Southern Pac. Co.* v. *Hall*, 100 Fed. 760; *Wisner* v. *Barber*, 10 Or. 342; *Bussard* v. *Hibler*, 42 Or. 500 (71 Pac. 642).

III. The alteration of said county road in the manner here shown was in law an abandonment of that portion thereof lying between the railway fence and the river: B. & C. Comp. § 5077; *Brook* v. *Horton*, 68 Cal. 554 (10 Pac. 204); *Ponder* v. *Shannon*, 54 Ga. 188; *Commonwealth* v. *Westborough*, 3 Mass. 407; *Commonwealth* v. *Cambridge*, 7 Mass. 158; *Bolley* v. *Walker*, 8 Allen, 21; *Warner* v. *Holyoke*, 112 Mass. 362.

IV. The evidence here shows that at the time of the injury the railroad company was entitled to the exclusive use and possession of the place where it happened: B. & C. Comp. § 5077; *Fitch* v. *New York, P. & B. R. Co.* 59 Conn. 414 (20 Atl. 345); *New York & N. E. R. Co.* v. *Comstock*, 60 Conn. 200 (22 Atl. 511); *Chaplin* v. *Com'rs of Highways*, 126 Ill. 264 (18 N. E. 765); *Kansas Cent. Ry. Co.* v. *Allen*, 22 Kan. 203; *Chicago R. I. & P. R. Co.* v. *George*, 145 Mo. 38 (47 S. W. 11); *Horey* v. *Village of Haverstraw*, 124 N. Y. 273 (26 N. E. 532); *Roby* v. *New York C. & H. R. R. Co.* 142 N. Y. 176 (36 N. E. 1053); *Jeffersonville, M. & I. R. Co.* v. *O'Connor*, 37 Ind. 95; *Louisville, N. A. & C. R. Co.* v. *Shank-*

*lin,* 98 Ind. 573; *Hamilton* v. *State,* 106 Ind. 361; *Jordan* v. *City of Chenoa,* 166 Ill. 530 (47 N. E. 191); *Gregory* v. *Knight,* 50 Mich. 61; *Lyle* v. *Lesia,* 64 Mich. 16; *Shelby* v. *State,* 29 Tenn. (10 Humph.) 165; *Cutter* v. *City of Cambridge,* 6 Allen, 20; *Ward* v. *Southern Pac. Co.* 25 Or. 433, 440 (23 L. R. A. 715, 36 Pac. 166, 60 Am. & Eng. R. R. Cas. 34); *Bayard* v. *Standard Oil Co.* 38 Or. 438 (63 Pac. 614).

V. The railroad company had acquired by adverse possession the title and right to the exclusive possession of the place where the plaintiff was injured: *Cutter* v. *City of Cambridge,* 6 Allen, 20; *City of St. Paul* v. *Chicago, Mil. & St. P. Ry. Co.* 45 Minn. 387 (48 N. W. 17); *Dudley* v. *Trustees of Frankfort,* 12 B. Mon. 610; *Cornwall* v. *Louisville & N. R. Co.* 87 Ky. 72; *Hill* v. *Crosby,* 2 Pick. 466 (13 Am. Dec. 448); *Coleman* v. *Flint & P. M. R. Co.* 64 Mich. 160; *Grady* v. *Dundon,* 30 Or. 333 (47 Pac. 915); *Bayard* v. *Standard Oil Co.* 38 Or. 438 (63 Pac. 614).

For respondent there was an oral argument by *Mr. Gilbert L. Hedges* and *Mr. Alfred S. Bennett,* with a brief over the names of *G. L. Hedges* and *Bennett & Sinnott* to this effect:

(1) In alleging negligence, especially in relation to matters peculiarly within the knowledge of defendant, a general allegation is sufficient: *Cederson* v. *Oregon Nav. Co.* 38 Or. 343, 350 (62 Pac. 637, 21 Am. & Eng. R. R. Cas. 624); *Stendel* v. *Boyd,* 67 Minn. 279 (69 N. W. 899); *Washburn* v. *Chicago & N. W. R. Co.* 68 Wis. 474 (32 N. W. 234); *Cunningham* v. *Los Angeles R. Co.* 115 Cal. 561 (47 Pac. 452); *Crowley* v. *Cincinnati, N. O. & T. P. R. Co.* 108 Tenn. 70 (65 S. W. 411); *Louisville & N. R. Co.* v. *Crunk,* 119 Ind. 542 (21 N. E. 31, 12 Am. St. Rep. 443); *Schaake* v. *Eagle Aut. C. Co.* 135 Cal. 472 (67 Pac. 759); Bliss, Code Plead. (2 ed.) §§ 309, 310, and 310*a.*

(2) It is not necessary to itemize separate or any kind of

damages: Watson, Pers. Inj. § 699; *Maybrey* v. *Cape Girardeav & J. G. R. Co.* 92 Mo. App. 596 (69 S. W. 394); *Gerdes* v. *Christopher & S. I. & F. Co.* 124 Mo. 347 (25 S. W. 557); Sutherland, Dam. (1 ed.) 770.

(3) The grant of the right to use and occupy a portion of a public street or highway by a railroad company, does not give an exclusive right, or deprive the public of their right to continue its use in every way not inconsistent with its use by the railroad company: 3 Elliott, Railroads, § 1093; *Toledo, P. & W. R. Co.* v. *Chisholm,* 83 Fed. 655; *Bryson* v. *Chicago, B. & Q. R. Co.* 89 Iowa, 677 (57 N. W. 430); *Louisville, N. A. & C. Ry. Co.* v. *Phillips,* 112 Ind. 59 (2 Am. St. Rep. 155, 13 N. E. 134).

(4) A permissive use never ripens into an adverse title without some words or acts of disclaimer.: Newell, Ejectment, § 4; *Allen* v. *Allen,* 58 Wis. 202 (16 N. W. 610, 613); *Anderson* v. *McCormick,* 18 Or. 301 (22 Pac. 1062); *Abraham* v. *Owens,* 20 Or. 511, 517 (26 Pac. 1112).

MR. JUSTICE BEAN, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. With the exception of some questions of practice hereafter referred to, the controlling question is whether the agreement between the county and the predecessor of the defendant gave the railway company an exclusive right to the use of that part of the county road between its fence and the river. The trial court proceeded on the theory, as we understand it, that the county court had authority to grant such a right, and that if it did so the plaintiff was a trespasser or mere licensee, to whom the defendant owed no duty except that of not wilfully or intentionally injuring her. It ruled, however, that the county court did not grant the railway company an exclusive right of way, but one to be exercised in common with pedestrians or travelers on foot; and, as a consequence, the plaintiff was not

a trespasser, but had a right to be where she was at the time of the accident, and is entitled to recover from the defendant if she was injured by its negligence. Now, a reference to the terms of the agreement between the county and the railroad company will, we think, give a satisfactory answer to the inquiry. The first order of the county court in relation to the matter granted the company the right "to use and occupy" any part of the county road for a railroad track or bed. It was required to repair any damage to the highway caused by the construction of its road, and, where it occupied the then traveled way, to construct a road at least twelve feet wide on a grade to be designated by the county. It was also required to construct barriers or guards at and in all places thereafter to be determined. This order clearly granted nothing more to the railway company than a mere right to use and occupy the county road, and evidently did not contemplate that its use should in any way be exclusive, or that the general traveling public should be denied a right to use any portion of the highway, subject, of course, to the paramount right of the company to use its track for the passage of trains and the operation of its road.

2. The second order, after reciting the particulars in which the company had failed to comply with the first, readopted the latter as the basis of the action of the court in making an additional order, defining more specifically the duties of the company in the matter of the construction of rock-wall protections, the grading and building of a new road at places where the road was interfered with by its track, and the condition in which it should keep the traveled way during the progress or suspension of the work. This order was not intended to enlarge the rights of the company, but was meant to impose upon it further restrictions and conditions in the use of the county road. There was nothing in it or in the former order to indicate

an intention on the part of the county to abandon any part of the road, or to relinquish its control over it. The orders simply conveyed or granted to the railway company the privilege or permission to use and occupy a portion of the road, but there is no intimation that such use shall be exclusive.

3. The third order was based upon an application of the company for permission to make certain changes "in the location of its railroad over certain county roads," and grants to the company leave and authority to "relocate its said road a distance of fourteen (14) feet nearer the river," so that the road "when relocated shall be, except where it deflects to a connection with the road as now constructed, fourteen (14) feet nearer the river than the present location." The company is required to fill as many of the holes between the track and the property owners' fences as will fall within a twelve foot roadway, and also "construct a fence or barrier between the traveled roadway and the railroad track for said distance of five thousand one hundred feet, and place the cattle guard upon its road at each end of said fence," and was relieved from building any barriers or stone walls along the road, except so far as it might deem necessary for its own protection. It was expressly stated that the contract entered into between the county and the company, as evidenced by the order of the county court made in 1869, should " be and remain in full force and effect," except as thereby changed and modified. By this order the railway company was given permission to move its track fourteen feet nearer the river than it was then located, and the additional duty was imposed upon it of repairing and improving the road between the track and the property owners' fences so as to make a twelve foot roadway, and to construct a fence between such roadway and its track, with suitable cattle guards at either end. Prior to the making of this order

the travel on the highway had been confined to that part
thereof between the railway track and the river, and the
evident purpose of the contemplated relocation was to
change the traveled way from the west to the east side of
the track, and to confine the general travel to the space
between the railway fence and the fences of the abutting
property owners, but there is no evidence in the order of
an intention on the part of the county court to relinquish
or surrender to the railway company the exclusive right
to use any part of the highway. The fence between the
traveled way and the track was to be built by the company
as a condition to its right to use the highway, and not be-
cause that portion of the way inclosed by it was to be the
exclusive property of the company. The fence was evi-
dently intended for the protection of travelers with teams
liable to be frightened by passing trains, and stock, which
otherwise might get on the track and be killed. There is
no provision that the railroad company should have the
right to use all that part of the road except the space east
of its fence. It was only permitted to relocate its track
fourteen feet nearer the river, and, if it had been the in-
tention of the county court to grant it the exclusive con-
trol over all that part of the highway between its fence
and the river—being more than one-half thereof—it would,
we think, have been plainly so stated in the order. This
construction is borne out by the subsequent conduct of
the traveling public and the company. The evidence
shows that from the time of the location of the railroad up
to the time of the trial the portion of the highway between
the railroad track and the river had been constantly and
uninterruptedly used by pedestrians and bicyclists as a
highway, without objection or protest from the railway
company; thus indicating that it was the general under-
standing of the company and the public that the exclusive

right was not granted to the company, but that it exercised such right in common with the general public.

4. The mere grant by the public authorities of permission to a railway company to use and occupy a portion of a public street or highway does not give it an exclusive right, or deprive the public of the right to use the same in any way not inconsistent with its use by the railway company. Mr. Elliott says : "As a general rule, a railroad company has the exclusive right to use its own track, and one who goes upon it without an invitation or license from the company is a trespasser. But this rule does not apply at highway crossings, nor, under ordinary circumstances, where the track is laid longitudinally upon the surface of a street, whether it be that of a commercial or a street railroad company. The public, exercising due care, still have a right to use the street. And so the railroad company, likewise exercising due care, has also the right to use that portion of the street upon which its track is laid. Their rights are in most respects mutual, reciprocal, and equal; neither being superior or paramount to the other, except that, as the company cannot so readily stop its trains or cars, and is confined to its track, it has the right of way of passage thereon, and persons who are upon the track must leave it and give way until the train or car has passed. Where the track is laid upon a street, a traveler, although a pedestrian, in the exercise of due care, may cross it at any point, and is not confined to the regular crossings": 1 Elliott, Railroads, §.1093. So, in *Bryson* v. *Chicago, B. & Q. R. Co.* 89 Iowa, 677 (57 N. W. 430), the plaintiff's intestate was killed by one of the defendant's trains on a public street, and the contention was that he was a trespasser, because the exclusive use of the street at the place where the accident occurred had been granted to the company. It was held, however, that the accident happened on a street which the defendant had the right to occupy and

use in common with the public, and the case presented was of an injury to one walking upon the track of a railway company which was laid upon a public street, and, while the decedent was not on the track by the invitation or consent of the company, she had a right to be there, because she was on a public highway.

In *Toledo, P. & W. R. Co.* v. *Chisholm*, 83 Fed. 652 (27 C. C. A. 663), a railroad company had been granted the right to lay its track along a public highway or levee of the City of Keokuk, under certain conditions, among which was that it should build a way of certain width and dimensions for public use. The company built a bridge track on an embankment crossing the levee, and the plaintiff's intestate, a coal operator, had gone upon it for the purpose of inspecting some cars on a coal track on a lower level, and while there was struck by a moving train and killed. It was contended by the company that under the ordinances of the city the public was prohibited from going upon or using that part of the levee occupied by its track, and in disposing of this defense the court says: "In support of its contention that the aforesaid ordinance operated to prohibit the public from going upon or using that part of the levee which is now occupied by the bridge track, much stress is laid by the defendant company on that provision of the ordinance which directs that the bridge track shall be located at least sixty-six feet from the front of the lots lying on Water Street, and that Water Street shall be of a uniform width or sixty-six feet; also on that provision which requires a passageway for teams and vehicles to be maintained underneath the embankment at the west end of the bridge. We think, however, that these provisions of the ordinance do not indicate an intention on the part of those who framed it to devote any part of the levee to the sole use of the bridge companies, and to exclude the public therefrom. It is doubtful, to say the least, whether

the municipality had the power to vacate a part of the levee, and devote it to the exclusive use of the bridge companies. But waiving the question, we do not find in the ordinance any evidence of such a purpose. The provisions of the ordinance last referred to were evidently inserted to prevent travel on the street or levee from being unduly obstructed by a location of the railroad track thereon, and by the building of an approach to the bridge; but they fall far short of declaring that the bridge companies should be at liberty to treat the space on which their track was directed to be laid as their private right of way, and that the public should be excluded therefrom. The ordinance seems to have been framed with a careful consideration for the rights of the public, and without any apparent intent to deprive the public of any of its former privileges. When considered as a whole, it shows very clearly, we think, that a joint use of the levee by the public and by the bridge companies for the movement of their trains was intended, and that such regulations were prescribed as would enable the public to use the same with ordinary safety and the least inconvenience. In this connection, it is worthy of notice that the views already expressed relative to the rights of individuals to treat the bridge track as a part of the levee, and to go upon the track for any lawful purpose, is in full accord with the practice which was pursued in that regard after the bridge was constructed. It was proven on the trial of the case that pedestrians had been in the habit of walking along the bridge track to and from the bridge, precisely as they were accustomed to walk over other railroad tracks which were located on the levee, and that such practice had been pursued for some years before the accident occurred, with the implied consent of the bridge companies, or whoever had control of the bridge track. At all events, it was not shown that the bridge companies or any one else had ever ob-

jected to such practice, or denied the right of persons on
foot to approach or leave the bridge in that way. We con-
clude, therefore, that the deceased was entitled to go upon
the bridge track for any lawful purpose, provided he ex-
ercised due care and circumspection, and that the defense
interposed by the defendant company, to the effect that
he was a trespasser while he was upon said track, and that
it owed him no duty while in that position, was properly
overruled": See, also, to the same effect, *St. Louis, I. M.
& S. Ry. Co.* v. *Neely,* 63 Ark. 636 (40 S. W. 130, 37 L. R. A.
616); *Louisville, N. A. & C. Ry. Co.* v. *Phillips,* 112 Ind. 59
(13 N. E. 134, 2 Am. St. Rep. 155).

In all the cases it will be noted that where, as in the case
at bar, there were no words in the agreement between the
public authorities and the railway company excluding the
public from the use of the highway, or granting to the rail-
way company an exclusive use thereof, the courts have held
that only a right to occupy and use the highway in com-
mon with the public was granted. Applying the doctrine
of these cases to the one in hand, the several orders of the
county court do not evidence an intention to grant defend-
ant the exclusive right to any part of the highway. The
first two simply granted permission to use and occupy the
road for a railroad track or bed, and this right does not
seem to have been subsequently enlarged. The provision
in the third order allowing the company to relocate its
track fourteen feet nearer the river, and requiring it to
construct a fence between the track and the traveled way,
was intended as a protection to the traveling public, and
not as an exclusive grant to the company. No particular
width of the space to be occupied by the railway is speci-
fied in the order, as would probably have been the case if
an exclusive use had been intended ; and it is not reason-
able to suppose that the county court meant to give to the
railway company, absolutely and without compensation,

all the highway except the small space between its fence and the fences of adjoining property owners. At least, it is but fair to assume that, if such had been its intention, it would have been expressed in clear and unmistakable language.

We are of the opinion, therefore, that the trial court did not err in its construction of the contract or agreement between the county court and the railway company. Neither did the orders of the county court and the subsequent occupation of the highway by the company indicate an abandonment by the public of any portion of the road. An abandonment is a question of intent, and there is no evidence of an intention by the county court or the public to abandon the use of the road by pedestrians.

5. Nor can the defendant claim the right by adverse possession. Its entry and occupation of the highway were by permission, and under a contract or agreement with the county court; and, having so entered and occupied, its possession was not adverse.

6. The only other questions in the case requiring notice are those arising upon an order of the court overruling the motion of the defendant to make the complaint more definite and certain. As a general rule a pleading is bad where allegations essential and material to a recovery are stated in the alternative: *Ladd* v. *Ramsby,* 10 Or. 207. In an action of this kind, however, a general allegation that the act which caused the injury was negligently or carelessly done or omitted is sufficient, without setting out the details of the negligence: *Cederson* v. *Oregon Nav. Co.* 38 Or. 343 (62 Pac. 637, 63 Pac. 763); Watson, Pers. Inj. § 698. This is particularly so when the manner of the commission of the negligent act is peculiarly within the knowledge of the defendant. In the latter case the plaintiff will not be required to set out the details : *Louisville & N. R. Co.* v. *Crunk,* 119 Ind. 542 (21 N. E. 31, 12 Am. St. Rep. 443). Whether

the stick of wood which caused the injury to the plaintiff
fell or was thrown from the engine or tender was a matter
within the knowledge of the defendant, but beyond the
cognizance of the plaintiff, and it was impossible for her
to state which was the case. Indeed, after all the testimony
on the trial was in, the truth in this regard was not clear.
One witness, of apparent good standing and character, tes-
tified that he saw the stick of wood thrown from the train ;
but, on the other hand, the defendant's employés testified
positively that such was not the case. The ultimate fact
is the striking of the plaintiff by the stick of wood from
the defendant's train, and that it occurred through the
negligence and carelessness of the defendant's employés. It
is immatérial whether it fell or was thrown from the train.
In either event, the defendant would be liable, if negligent,
and it was only in its evidentiary bearing as affording a
stronger inference of negligence in the one case than in
the other that the inquiry became important.

7. It was also sought to require the plaintiff to allege
separately the exact amounts of damages on account of
medical attendance, care, and nursing, but we do not un-
derstand that the law requires such allegations. The dam-
ages which the plaintiff suffered on account of the matters
referred to were special, and, to enable her to recover there-
for, they must be alleged in the complaint; but this rule
does not mean that the damages must be itemized, and the
amount of each separately stated. Mr. Watson says in his
work on Damages and Personal Injuries, § 699: "In an
action for personal injuries, the plaintiff is not required
to set out the several elements of recovery, and the amount
claimed for each. 'When it is said that special damages
must be alleged in order to be proved, it is not meant that
the sum claimed for the particular injury must be sepa-
rately stated, but that the injury itself, if it is not such as
naturally and necessarily results from the wounds or hurts

alleged, must be averred.' " And to the same effect are 5 Ency. Pl. & Prac. 750; 1 Sutherland, Damages, 770; *Maybrey* v. *Cape Girardeau & J. G. R. Co.* 92 Mo. App. 596 (69 S. W. 394); *Gerdes* v. *Christopher & S. I. & F. Co.* 124 Mo. 347 (25 S. W. 557).

There are other assignments of error, but they are involved in, and intimately connected with, the questions already considered, and require no further notice. The judgment is affirmed.     AFFIRMED.

---

ON MOTION FOR REHEARING.

PER CURIAM. Notwithstanding the able and forceful argument in the petition for rehearing, a reëxamination of the chief and controlling point in this case confirms us in the decision heretofore rendered. The other points not referred to in the opinion were carefully considered before the decision, and were deemed without merit. It was believed that they were not of sufficient importance to require a written opinion.

8. The evidence of user by the public of that part of the county road between the railroad track and the river, the testimony that the officers and agents of the company made no claim to an exclusive right to that part of the highway in conversations or negotiations in relation to the matter, and the cross-examination of Mr. Koehler upon that subject, were all competent as evidence of a practical construction by the public and the defendant of the orders of the county court granting to the company the right to use a part of the highway for its track, and also upon the questions of abandonment and adverse user, which were made issues in the case, and submitted to the jury.

9. The attempted cross-examination of the witness Turney as to whether that portion of the highway in contro-

versy had been worked or improved by the road supervisors since the building of the fence was not so connected with the direct examination of the witness as to make the ruling of the court error. Moreover, the fact sought to be elicited was testified to by other witnesses, and, as we understand the record, admitted throughout the trial. Ganong's evidence that other portions of the county road had been worked and improved by the county authorities was for the purpose of showing a highway by user prior to the construction of the railroad. The defendant company was probably estopped by its contract with the county to deny the existence of the highway, but nevertheless the evidence could have done it no injury.

The testimony of Apperson, stricken out, that the fence built by the railroad company was intended to be on the line between the railroad company's right of way and the county road, assumed that there was a difference between the railroad right of way and the county road—the material fact in question. Again, Apperson said that he had no knowledge on the subject other than that of any other citizen of the county, and he was therefore not qualified to testify as to what was intended by the parties. His testimony was not competent for the purpose of contradicting Ganong, because Ganong was the road supervisor at the time the railroad track was changed and the fence constructed, and his testimony referred to and was based upon conversations between himself, as an officer of the county, and the agents of the company.

10. The testimony of Young that just prior to and at the time of the injury to the plaintiff he saw wood being thrown from the engine was competent. The witness stood along the side of the railroad track near where the accident happened, and testified that he was watching the train as it passed the plaintiff, and saw some one throw wood and bark from the engine. The evidence of the state-

ments made by the fireman, Pearl, to Moore, in the barber shop in Oregon City, shortly after the accident, was offered and admitted as impeaching testimony, and the jury were so advised by the court. The modification of instructions referred to in assignments of error 36, 37, 38, and 39 was not injurious to the defendant. The instructions as requested by it were intended to define the duties of the defendant to a mere licensee or trespasser on its right of way, and the modification was for the purpose of advising the jury that the rule stated in the instructions would not apply to a railroad track situated upon a public road or way.

The petition for rehearing will be denied.

REHEARING DENIED.